USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/15/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
                                                              :
                                                              :  **OPINION AND ORDER**
                                                              :  **GRANTING DEFENDANTS'**
                                                              :  **PARTIAL MOTION TO DISMISS**
                                                              :
                                                              :  18 Civ. 4361 (AKH)
                                                              :
In Re Novartis and Par Antitrust Litigation                   :  18 Civ. 5536
                                                              :  18 Civ. 5603
                                                              :  18 Civ. 5708
                                                              :  18 Civ. 5886
                                                              :  18 Civ. 6776
                                                              :  18 Civ. 9861
                                                              :  18 Civ. 11835
                                                              :  18 Civ. 12293
                                                              :
------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

      Two Novartis companies, Novartis Pharmaceuticals Corporation and Novartis AG, (both, "Novartis"), nearing the end of one patent covering their prescription drug, Exforge, a blood pressure regulator, and facing challenges to two others, made an agreement with Par Pharmaceutical, Inc. ("Par") to keep Par's generic equivalent off the market for as much as two years. Par agreed to delay marketing its generic until September 30, 2014; and Novartis agreed not to charge Par with infringement and to delay launching its own authorized generic to compete with Par until March 30, 2015.

      Plaintiffs, for themselves and a class, sued Novartis and Par for violating federal antitrust laws, alleging "per se" and "rule of reason" violations. Defendants move to dismiss the "per se" count and claims under state laws. I grant the motions.

## Background

### A. Factual History

Because defendants' motion to dismiss is partial and does not challenge the general sufficiency of plaintiffs' complaints, the discussion contextualizing the motion can be brief. This is a civil antitrust action arising out of allegations that Novartis Pharmaceuticals and Par Pharmaceuticals engaged in anticompetitive conduct that delayed the entry of generic competition for Exforge, a prescription drug developed by Novartis that treats hypertension and has the active ingredients amlodipine and valsartan.

Plaintiffs' core allegation is that Novartis and Par entered into an unlawful settlement agreement in which Par would not compete in the Exforge market by introducing a generic version of Exforge for a period of time, effectively extending the life of Novartis' patents. Novartis owned U.S. Patent No. 5,399,578 ("the '578 patent), which covered valsartan, marketed under the name Diovan. Amended DPP Complaint ("DP Compl."), 18-cv-4361, ECF 47 ¶¶ 1, 4, 77. The validity of this patent was not challenged. The patent expired on March 21, 2012, and a regulatory exclusivity attached to the patent expired on September 21, 2012. According to plaintiffs' theory, this is the earliest possible date that generics would have entered the market, but for the unlawful agreement. DP Compl. ¶ 81.

Specifically, the class complaints allege that as Par developed a generic version of Exforge, Par notified Novartis that it planned to launch its generic product prior to the expiration of certain follow-on patents (U.S. Patent Nos. 6,294,197 ("the '197 Patent") and 6,395,728 ("the '728 Patent")), which it claimed were invalid or would not be infringed by Par's proposed generic equivalents. DP Compl. ¶ 82.

Pursuant to the Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585, known as the Hatch-Waxman Act, generic manufacturers may apply for approval to market a generic version of a previously approved medication. In contrast to the detailed and involved process to market a medication for the first time, in a New Drug Application ("NDA"), pursuant to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301, *et seq.*, an Abbreviated New Drug Application ("ANDA") requires a less elaborate showing: roughly stated, that the proposed generic medication is equivalent to an existing medication. In conjunction with its ANDA, a filer may certify that patents disclosed by the brand manufacturer and purporting to cover the existing medication are invalid or will not be infringed by the marketing of the generic (a "Paragraph IV certification"). 21 U.S.C. § 355(j)(2)(A)(vii)(IV).

An applicant filing a Paragraph IV certification must give notice to the patent holder, among others, and describe the basis for its position that the patent at issue is invalid or will not be infringed. 21 U.S.C. § 355(j)(2)(B). Such an application constitutes an act of patent infringement. 35 U.S.C. § 271(e)(2)(A). "If the generic applicant begins to market its generic product prior to a determination of the patent's validity or scope, the launch is considered to be 'at risk' and the manufacturer can be forced to pay damages." *In re Wellbutrin XL Antitrust Litig.*, 133 F. Supp. 3d 734, 739 (E.D. Pa. 2015) (citing 35 U.S.C. § 271(e)(4)(C)), *aff'd sub nom. In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132 (3d Cir. 2017). If a brand manufacturer files suit within forty-five days of the application, the suit triggers an automatic thirty-month stay on the FDA's approval of the application, but a brand manufacturer is not required to sue within this period. 21 U.S.C. §§ 355(c)(3)(C), (j)(5)(B)(iii).

The regulatory framework incentivizes generic manufacturers to file an ANDA and to challenge invalid patents. *See In re Nexium (Esomeprazole) Antitrust Litig.*, 42 F. Supp.

3

3d 231, 245 (D. Mass. 2014), *aff'd,* 842 F.3d 34 (1st Cir. 2016). The first applicant to submit a Paragraph IV certification and receive approval for its ANDA gains a 180-day exclusivity period that begins on the date of the generic's first commercial marketing, during which no other generics may be marketed. 21 U.S.C. § 355(j)(5)(B)(iv). The 180-day period of exclusivity does not apply to any generic marketed by the brand manufacturer (an "authorized generic"), because the brand manufacturer has already received approval for the drug. *See King Drug Co. of Florence v. Smithkline Beecham Corp.,* 791 F.3d 388, 393 (3d Cir. 2015).

Following the filing of a Paragraph IV certification, parties to the patent infringement dispute may resolve the dispute through an agreement, in which the brand manufacturer grants a license to the generic manufacturer, along with other consideration, allegedly to forestall a challenge to the patent and the introduction of generic competition. Such agreements are referred to as reverse payment settlement agreements, because in a traditional license arrangement, the patent or rights holder receives consideration from the alleged infringer and subsequent licensee, rather than the reverse. *See F.T.C. v. Actavis, Inc.,* 570 U.S. 136, 140 (2013). When the agreement includes as consideration a promise that the brand manufacturer will not market its own authorized generic, as alleged here, the agreement is referred to as a "no-AG agreement."

The Food and Drug Administration ("FDA") tentatively approved Par's ANDA on March 19, 2010. The FDA granted final approval of Par's ANDA on March 28, 2013, representing, according to plaintiffs' theory, the latest possible date that the generics would have entered the market, but for the allegedly unlawful agreement. DP Compl. ¶ 11.

A second generic manufacturer, Synthon Pharmaceuticals Inc., also filed an ANDA with the FDA, seeking approval to market generic amlodipine and valsartan tablets. DP

4

Compl. ¶ 3. On November 30, 2011, Par entered into an asset purchase agreement with Synthon to acquire Synthon's ANDA and its generic version of Exforge. DP Compl. ¶ 5.

Around 2011, rather than sue Par for patent infringement, Novartis and Par entered into an agreement under which (1) Par would not compete in the market for fixed combinations of amlodipine and valsartan until September 30, 2014, and (2) Novartis would not launch its own authorized generic version of Exforge until March 30, 2015. Thereby, Par gained the exclusive right to market generic Exforge for six months, to begin, September 30, 2014, after Novartis' period of exclusivity ended, until March 30, 2015. DP Compl. ¶ 108. Plaintiff alleges that the Novartis/Par agreement had the dual effect of (1) delaying the entry of generic drugs to compete with Exforge (thereby extending the limited monopoly granted to Novartis by the patent laws) and (2) granting Par, in consideration, an exclusive market for 180 days for its generic, thereby allowing higher drug prices for the extended periods of exclusivity.

The complaint alleges that, pursuant to the agreement, the Par generic, in fact, entered the market on September 30, 2014 and Novartis' generic, after Par's exclusive period ended, on March 30, 2015.

### B. Procedural History

The parties have divided the now nine cases into two groups for consolidation: direct purchaser plaintiffs[1] ("DPPs") and end payor plaintiffs ("EPPs"), based on the indirect purchaser rule, which limits recovery under federal law to those who purchased anticompetitive

---

[1] Among this group are several retailers, including Walgreen Co., The Kroger Co., Rite Aid Hdqtrs. Corp., and CVS Pharmacy, Inc., who have asserted claims largely analogous to the other direct purchaser plaintiffs. Following a hearing on November 8, 2018, I denied Walgreen Co. and The Kroger Co.'s motion for leave to file a supplemental brief and directed that this litigation be coordinated with that of the other direct purchaser plaintiffs.

products directly from the alleged antitrust violator. *See Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 208 (1990) ("The direct purchaser rule serves, in part, to eliminate the complications of apportioning overcharges between direct and indirect purchasers."); *see also Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968); *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). Accordingly, the "Direct Purchasers" raise claims under Sections 1 and 2 of the Sherman Act; the "End Payors" raise various state law claims for anticompetitive activity. The DPPs and EPPs seek to represent classes of similarly situated plaintiffs.

## Discussion

### A. Legal Standard

In ruling on a motion to dismiss for failure to state a claim, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001), *as amended* (Apr. 20, 2001). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

### B. Direct Purchaser Plaintiffs

#### 1. Per Se Claim for Violations of Section 1 of the Sherman Act

DPPs assert that the no-AG reverse payment agreement alleged between defendants is a market division that is per se illegal under Section 1. "The *per se* standard was

6

created to streamline antitrust claims in situations where the agreement has 'such a predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit" that courts may predict with confidence that the conduct is unreasonably anticompetitive every time it arises.'" *United Food & Commercial Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1075 (N.D. Cal. 2014) (quoting *Northern Pacific Ry. Co. v. United States,* 356 U.S. 1, 5 (1958)).

*FTC v. Actavis, Inc.*, 570 U.S. 136 (2013) forecloses the type of per se claim that plaintiffs seek to assert here. There, the Supreme Court explicitly rejected the FTC's position that "reverse payment settlement agreements are presumptively unlawful and that courts reviewing such agreements should proceed via a 'quick look' approach, rather than applying a 'rule of reason.'" *Id.* at 158–59.

> In [*California Dental Association v. F.T.C.*], we held (unanimously) that abandonment of the "rule of reason" in favor of presumptive rules (or a "quick-look" approach) is appropriate only where "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets." [526 U.S. 756, 770 (1999).] *We do not believe that reverse payment settlements, in the context we here discuss, meet this criterion.*

*Id. at* 159 (emphasis added).

The *Actavis* Court explained its basis for adopting a rule of reason rather than a per se or presumptive rule, observing that "the likelihood of a reverse payment bringing about anticompetitive effects depends upon its size, its scale in relation to the payor's anticipated future litigation costs, its independence from other services for which it might represent payment, and the lack of any other convincing justification. The existence and degree of any anticompetitive consequence may also vary as among industries." *Id.* In assessing the unjustified anticompetitive impact of these agreements, trial courts need not require every manner of proof;

7

instead they may structure the litigation and calibrate the appropriate proof in light of the circumstances. *Id.* at 159–60.

Plaintiffs attempt to distinguish *Actavis* on the basis of the timing of the settlement. In *Actavis*, litigation had begun, whereas no suit was ever filed by Novartis. There is no basis in the Hatch-Waxman statutory framework to distinguish between these circumstances. As discussed, filing a Paragraph IV certification under the Hatch-Waxman framework amounts to a technical act of patent infringement. Novartis could have sued Par, even though it ultimately did not do so, declining to engage the automatic thirty-month stay provided for in the Hatch-Waxman act. This timing-based difference neither materially distinguishes *Actavis* nor disturbs the basis of the Supreme Court's rule eschewing theories of liability that would preclude consideration of the necessary complexities of this broad class of transactions.

Because the alleged conduct unfolded in the context of and depended on an intricate statutory regime, the Supreme Court's teaching on that regime applies, and not general principles of market allocation agreements, as DPPs urge. Cases cited by DPPs in support of its theory addressed geographic, rather than temporal market division, *see, e.g. Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46, 48–49 (1990), and I can infer no basis for extending the per se rule to the former context, or treating a no-AG reverse payment agreement as an output restriction or price-fixing agreement. Similarly, there is no plausible rationale to distinguish *Actavis* for having addressed cash-based consideration, rather than a no-AG agreement. DPPs' arguments concerning the relative anticompetitive impact of no-AG agreements vis-à-vis cash-based arrangements underscore the appropriateness of a more comprehensive rule of reason approach.

Subsequent case law uniformly supports the application of *Actavis* and the rule of reason approach to this case. *See King Drug Co. of Florence v. Smithkline Beecham Corp.*, 791

F.3d at 409 ("[A] no-AG agreement . . . is subject to antitrust scrutiny under the rule of reason."); *United Food & Commercial Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1075 (N.D. Cal. 2014) ("Plaintiffs have not cited, and I have not found, any case where a no-authorized generic agreement was analyzed under the *per se* test. Instead, district courts have considered no-authorized generic agreements under the rule of reason approach as set forth by the Court in *Actavis* and discussed above.") (citing cases). Plaintiffs' further arguments that reverse payments fit within other categories of per se illegality are similarly inconsistent with *Actavis* and are unavailing here.

Plaintiffs' per se Section 1 claim is dismissed.

### 2. Motion for Injunctive Relief

DPPs Walgreen Co. and the Kroger Co.'s claims for injunctive relief are dismissed with prejudice. Injunctive relief requires a showing of "ongoing or future harm caused by the alleged Sherman Act violations." *United Food & Comm. Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, No. 14-MD-02521-WHO, 2015 WL 4397396, at *3 (N.D. Cal. July 17, 2015). Walgreens and Kroger do not, and cannot, allege ongoing harm, because they acknowledge the entry of at least five generic manufacturers into the market on or shortly after March 30, 2015. Walgreens Complaint, 18-cv-09861, ECF 1, ¶ 117. Walgreens and Kroger's theory of ongoing harm based on the delayed return of prices to competitive levels is equally unavailing. *See id.* Moreover, monetary damages are a sufficient remedy here. Plaintiffs' supplementary citation to the Federal Trade Commission's March 2019 decision in *In re: Impax Laboratories, Inc.*, Docket No. 9373 (March 28, 2019), ECF 168, does not require otherwise.

The claims for injunctive relief are dismissed.

C. **End Payor Plaintiffs' State Law Claims**

Defendants seek to dismiss a number of the EPPs' state-law claims, based on the following arguments: (1) Many of the state claims are barred by statutes of limitation. 2) Unjust enrichment claims, where not specifically provided by state law, are inconsistent with Supreme Court precedent under *Illinois Brick*, which limits recovery to direct purchasers in antitrust actions. (3) Where alternative remedies are available, claims for unjust enrichment are duplicative. (4) Certain unjust enrichment claims require a direct benefit, which the EPPs, as indirect purchasers, do not plead. (5) The Illinois Antitrust Act limits antitrust class claims to those brought by the attorney general. (6) Consumer protection claims under Massachusetts and Missouri law require claims by end consumers, and not corporations, and thus fail.

1. Statute of Limitations

Defendants argue that, based on the most favorable reading of the complaint, plaintiffs admit that a reasonable plaintiff would have been on notice of the claims no later than September 2014, when they allege that, after "Novartis failed to launch an AG upon market entry by Par . . . it became clear that Novartis and Par's Agreement contained a no-AG promise." EPP Amended Complaint ("CAC"), 18-cv-5536, ECF 25, ¶ 189. On this basis, defendants argue that claims based on statutes of limitation shorter than three years and nine months should be dismissed.

None of the EPPs' arguments to the contrary are persuasive. Unlike *In re Generic Pharm. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 852 (E.D. Pa. 2019), the basis of the

statutes of limitations defense is apparent from the pleadings, and no further discovery is required.

Moreover, EPPs' theory of continuing harm is not plausible. There is no plausible interpretation of the facts in which the conspiracy or any harm caused by it extended past March 2015, at which time at least five additional manufacturers entered the market, resulting in "intense" competition. EPP CAC ¶ 193. Similarly, the complaint lacks proper allegations of a continuing course of conduct. For the same reasons, plaintiffs' reliance on continuing violations doctrine, which depends on an allegation of continuing harm, also fails.

Accordingly, the statutory antitrust claims based on the laws of Kansas, Mississippi, and Tennessee; and the unjust enrichment claims based on the laws of Alaska, Arkansas, Colorado, Delaware, District of Columbia, Kansas, Maryland, Massachusetts, Mississippi, Montana, New Hampshire, North Carolina, Oklahoma, Oregon, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia, and Washington are dismissed.

2. State Unjust Enrichment Claims

   a. *States that Follow Illinois Brick*

Where barred from bringing statutory antitrust claims, EPPs have pleaded unjust enrichment. Defendants argue that these claims are precluded in the jurisdictions that have not repudiated *Illinois Brick*'s prohibition against indirect purchaser damages actions. *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). There, "the Supreme Court held that only direct purchasers could sue for unjust benefits gained by a defendant manufacturer through anticompetitive conduct that violated federal antitrust laws." *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 232 (S.D.N.Y. 2012).

11

"Despite a handful of contrary case law . . . , the vast majority of courts have held that indirect purchasers may not bring state claims for unjust enrichment if they otherwise would be barred from bringing a claim under that state's antitrust and consumer-protection statutes, absent a showing that the common law of the state in question expressly allows for such recovery." *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 763 (E.D. Pa. 2014); *see also In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d at 232 ("[I]ndirect purchaser plaintiffs 'may not recover restitution in states that follow the rules of *Illinois Brick*" and that therefore states that have 'not expressly passed *Illinois Brick* repealer legislation or interpreted [their] law in such a way as to override the rule of *Illinois Brick* [are] presumed to have decided to follow federal law, including the *Illinois Brick* limitation on indirect purchaser claims'") (quoting *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 413 (S.D.N.Y. 2011)).

Plaintiffs' position amounts to an attempt to circumvent *Illinois Brick*, which confined antitrust claims to direct purchasers, in the absence of a showing that such a recovery is allowed. EPPs' cited authority generally did not directly address these principles, or are otherwise distinguishable. Plaintiffs' citation to *In re Generic Pharm. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 849 (E.D. Pa. 2019) is unpersuasive. While it is true that the gains to the defendant, rather than plaintiffs' losses, present the first step in considering a claim for unjust enrichment, the concern for double recovery and the apportionment of claims remains.

Accordingly, EPPs' unjust enrichment claims based on the laws of Alabama, Alaska, Arkansas, Colorado, Connecticut, Delaware, Georgia, Idaho, Illinois, Kentucky, Louisiana, Maryland, Massachusetts, Missouri, Montana, New Jersey, Oklahoma, Pennsylvania, Puerto Rico, South Carolina, Texas, Virginia, Washington, and Wyoming are dismissed.

b.  *Direct Benefit Pleading Requirement for Certain Unjust Enrichment Claims*

Defendants identify eleven states that require that a plaintiff confer a direct benefit on the defendant in order to recover under a theory of unjust enrichment. Defendants' Memorandum of Law in Support of Partial Motion to Dismiss, 18-cv-5536, ECF 38 ("Br."), at 31–36. Because EPPs do not plead a direct benefit, *see* CAC ¶ 174(f), claims within these states are deficient and are dismissed. *See, e.g., Cole v. NIBCO, Inc.*, No. 3:13-CV-07871 FLW, 2015 WL 2414740, at *14 (D.N.J. May 20, 2015) (dismissing Alabama claim for lack of a "sufficiently direct relationship"); *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1090 (S.D. Cal. 2017) (dismissing Florida claim) (citing *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017)); *Archer v. Holmes*, No. 1:17-CV-2051-TWT, 2018 WL 534475, at *5 (N.D. Ga. Jan. 23, 2018) (dismissing Georgia claims); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380 (E.D. Pa. 2010) (recognizing a direct benefit requirement for Idaho unjust enrichment claims) (citing *Hayden Lake Fire Prot. Dist. v. Alcorn*, 111 P.3d 73, 91–92 (Idaho 2005)); *Pixler v. Huff*, No. 3:11-CV-00207-JHM, 2011 WL 5597327, at *11 (W.D. Ky. Nov. 17, 2011) (dismissing Kentucky claim); *Rivers v. Amato*, No. CIV. A. CV-00-131, 2001 WL 1736498, at *4 (Me. Super. June 22, 2001) (granting summary judgment on Maine claim); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 427 (S.D.N.Y. 2017) (dismissing Michigan claim); *Apache Corp. v. MDU Res. Grp., Inc.*, 603 N.W.2d 891, 895 (N.D. 1999) (requiring that the benefit be obtained "at the direct expense of the [complainant]"); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-MD-01819 CW, 2010 WL 5094289, at *7 (N.D. Cal. Dec. 8, 2010) (dismissing Pennsylvania claims) (citing *Stutzle v. Rhone-Poulenc S.A.*, No. 002768OCT.TERM2002, 2003 WL 22250424, at *1–

*2 (Pa. Com. Pl. Sept. 26, 2003)); *J.P. Morgan Chase Bank, N.A. v. Leigh*, No. CA 11-246ML, 2011 WL 4351584, at *2 (D.R.I. Aug. 23, 2011) (dismissing Rhode Island claim), *report and recommendation adopted*, No. CA 11-246 ML, 2011 WL 4351561 (D.R.I. Sept. 15, 2011); *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-MD-02042, 2013 WL 1431756, at *26 (E.D. Mich. Apr. 9, 2013) (same).

EPPs attempt to call into question the existence of a direct benefit requirement in these jurisdictions, but their cited authority is either consistent with the direct benefit requirement, predates more recent authority establishing a direct benefit requirement, is distinguishable, or provides only a cursory analysis of the law in the state. In the absence of persuasive authority to the contrary, unjust enrichment claims arising based on the laws of Alabama, Florida, Georgia, Idaho, Kentucky, Maine, Michigan, New Jersey, North Dakota, Pennsylvania, and Rhode Island are dismissed.

    c.    *States Conferring an Independent Statutory Remedy: Plaintiffs' Unjust Enrichment Claims in States with Antitrust Remedies Are Duplicative and Dismissed*

At the hearing, I raised the issue, *sua sponte*, of whether plaintiffs' remaining claims for unjust enrichment, even where not barred by *Illinois Brick*, were not unnecessarily duplicative of their statutory claims, and thus appropriately dismissed. I permitted the parties to submit supplementary briefing on the issue, providing sufficient notice and opportunity to be heard. *See Wachtler v. Cty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994).

Pursuant to Fed. R. Civ. P. 8(d)(2), "[a] party may set out two or more statements of a claim . . . alternatively or hypothetically, either in a single count . . . or in separate ones."

While parties are also permitted to plead inconsistent claims, Fed. R. Civ. P. 8(d)(3), I nevertheless conclude that plaintiffs' unjust enrichment claims are unnecessary and duplicative of their statutory claims. *See Alce v. Wise Foods, Inc.*, No. 17-cv-2402 (NRB), 2018 WL 1737750, at *11 (S.D.N.Y. Mar. 27, 2018) ("Courts in the Second Circuit have recognized that 'an unjust enrichment claim cannot survive where it simply duplicates, or replaces, a conventional contract or tort claim.'"). EPPs' unjust enrichment claims will rise and fall with its statutory claims. To the extent that those claims succeed, they are duplicative, and to the extent they are deficient, its unjust enrichment claims will not remediate them.

Dismissing these claims serves an important function in streamlining the litigation proceedings of a complex case. Accordingly, EPPs' unjust enrichment claims based on the laws of Arizona, California, Florida, Hawaii, Iowa, Maine, Michigan, Minnesota, Nebraska, Nevada, New Mexico, New York, North Dakota, South Dakota, Utah, Vermont, West Virginia, and Wisconsin are dismissed.

### 3. Indirect Purchaser Class Action Under Illinois Antitrust Act

Defendants also move to dismiss EPPs' claims under the Illinois Antitrust Act, 740 Ill. Comp. Stat. Ann. 10/3, asserting that only the State Attorney General may maintain a class action on behalf of indirect purchasers. Br. at 36 (citing See 740 Ill. Comp. Stat. Ann. 10/7(2) ("[N]o person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General . . . .")). "District courts are divided on whether the Illinois Antitrust Act precludes indirect purchasers from filing class actions. However, a majority of courts have held that the Act is distinguishable from the New York law in [*Shady Grove Orthopedic Assocs., P.A.*

15

*v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)] and that it prohibits indirect purchaser class actions." *In re Effexor Antitrust Litig.*, 337 F. Supp. 3d 435, 459 (D.N.J. 2018); *see also In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d at 416.

As a result, EPPs' Illinois claims are dismissed.

### 4. Massachusetts and Missouri Consumer Protection Claims

Under Massachusetts law, indirect purchasers may not bring claims under § 11 of the Massachusetts Consumer Protection Act, so EPPs have sought to bring them under § 9 of the Act, which excludes those engaged in "trade or commerce." Mass. Gen. Laws. Ch. 93A, §§ 9, 11; *In re Aggrenox Antitrust Litig.*, No. 3:14-MD-2516 (SRU), 2016 WL 4204478, at *8 (D. Conn. Aug. 9, 2016). "Those provisions are naturally construed to make section nine exclusively applicable to consumers and section eleven exclusively applicable to business entities." *Id.* The single case cited by the EPPs calling into question this distinction concerned a non-profit hospital that was created by legislative mandate, conditions not present here. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 295 F. Supp. 2d 30, 46 (D.D.C. 2003).

Similarly, the Missouri Merchandising Practices Act requires that purchases be made "primarily for personal, family or household purposes" and does not cover insurance plans, because such purchases are not for personal purposes but to fulfill the plan's business purposes. Mo. Rev. Stat. § 407.025; *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 355 F. Supp. 3d 145, 157 (E.D.N.Y. 2018). EPPs' citations either did not address the statutory limitations argument or address classes of purchasers who acquired the products "for their own use and not for resale." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 3268649, at *6 (N.D. Cal. July 28, 2011). Unlike *In re Generic Pharm. Pricing Antitrust*

*Litig.*, 368 F. Supp. 3d 814, 847 (E.D. Pa. 2019), there are no individuals who could potentially constitute "consumers" among the plaintiffs, and it is unnecessary to defer this determination until later in the litigation.

As a result, EPPs' claims based on the laws of Massachusetts and Missouri are dismissed.

## Conclusion

For the reasons stated, defendants' partial motion to dismiss is granted. DPPs' per se Section 1 claim is dismissed. Walgreen Co. and the Kroger Co.'s claims for injunctive relief are dismissed.

The following end-payor claims are dismissed:

a. Statutory antitrust claims in the following jurisdictions with a statute of limitations three years or shorter: Kansas, Mississippi, and Tennessee;

b. Unjust enrichment claims in the following jurisdictions with a statute of limitations three years or shorter: Alaska, Arkansas, Colorado, Delaware, District of Columbia, Kansas, Maryland, Massachusetts, Mississippi, Montana, New Hampshire, North Carolina, Oklahoma, Oregon, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia, and Washington;

c. Unjust enrichment claims in the following jurisdictions with a direct benefit pleading requirement: Alabama, Florida, Georgia, Idaho, Kentucky, Maine, Michigan, New Jersey, North Dakota, Pennsylvania, and Rhode Island;

d. Unjust enrichment claims in the following jurisdictions that are precluded by state law restrictions, including restrictions on indirect purchaser antitrust suits: Alabama,

17

Alaska, Arkansas, Colorado, Connecticut, Delaware, Georgia, Idaho, Illinois, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Missouri, Montana, New Jersey, Oklahoma, Pennsylvania, Puerto Rico, South Carolina, Texas, Virginia, Washington, and Wyoming;

    e. Unjust enrichment claims in the following jurisdictions that are duplicative of otherwise pled state statutory claims: Arizona, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin;

    f. Statutory antitrust claim brought in Illinois, where only the Attorney General may bring a class-action lawsuit on behalf of indirect purchasers, 740 Ill. Comp. Stat. Ann. 10/7(2).

    g. Statutory consumer protection claims brought in Massachusetts, which prohibits entities engaged in "trade or commerce" are prohibited from pursuing indirect purchaser suits, Mass. Gen. Laws ch. 93A §§ 9, 11; and

    h. Statutory consumer protection claims brought in Missouri, which allows only claims based on purchases made "primarily for personal, family, or household purposes," Mo. Rev. Stat. § 407.025(1).

    Accordingly, DPPs' Section 1 (applying the rule of reason) and Section 2 Sherman Act claims remain. In addition, remaining in the action are end payor plaintiffs' statutory antitrust claims arising under the laws of Arizona, California, the District of Columbia, Hawaii, Iowa, Maine, Michigan, Minnesota, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Utah, Vermont, West

Virginia, and Wisconsin. Also remaining is EPPs' Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204, claim.

The clerk shall terminate the following motions: 18-cv-4361, ECF 118; 18-cv-5536, ECF 36, 51; 18-cv-5603, ECF 46, 59; 18-cv-5708, ECF 33, 46; 18-cv-5886, ECF 48, 61; 18-cv-9861, ECF 17, 18.

SO ORDERED.

Dated:     August 14, 2019
              New York, New York

                                                ALVIN K. HELLERSTEIN
                                                United States District Judge